# THE STATE v. WILLIAM E. FOWLER, Appellant.

**Division Two, May 25, 1915.**

1. **ADMINISTRATION: Failure to File Receipt of Distribution: Conversion.** Proof of a failure by the administrator to file with the probate court a receipt showing a payment by him to the distributee of the money required by the order of the court approving his final settlement to be paid to her, does not alone constitute prima-facie evidence of a criminal conversion of such money by him under the terms of section 4556, Revised Statutes 1909.

2. ———: ———: ———: **Things Required By the Statute.** In the prosecution under section 4556, Revised Statutes 1909, of an administrator for failure to pay over to a distributee the money found by an order of the probate court to be due her, it must be shown (1) that he converted the said sum of money to his own use, or (2) that he invested it in some kind of property, or (3) that he made way with it, or (4) that he secreted it and hid it away where it could not be found. If the only evidence to show anyone of these four things is an order of the probate court directing him to pay a certain sum to a named distributee and a failure on his part to comply with the order of the court to report the payment to the court with a voucher therefor "as speedily as possible," a conviction cannot stand; for it may yet be true that the money was actually paid to the distributee. The evidence should have gone further and shown a failure to pay, or at least a demand for payment, or something else that showed an actual conversion or some of the other things denounced by the statute.

3. ———: ———: ———: **Presumption of Innocence: Prima-facie Case.** The presumption of innocence with which the law clothes a defendant shields and protects him until it is overcome by proof which as a matter of law makes a prima-facie case of guilt. And a prima-facie case of guilt is not made so long as every fact educed by the proof may be true and the defendant yet be innocent.

Appeal from Clay Circuit Court.—*Hon. David H. Harris,* Judge.

REVERSED AND DEFENDANT DISCHARGED.

*James M. Sandusky, Ralph Hughes, Craven & Moore* and *Isaac B. Kimbrell* for appellant.

(1) The court erred in refusing instruction 13 requested by defendant upon circumstantial evidence. State v. Moxley, 102 Mo. 388. An instruction that defendant's guilt need not be proved by direct testimony, but by circumstances, is dangerous, unless such an instruction as above from the Moxley case be given. State v. Sasseen, 75 Mo. App. 203. (2) The court erred in refusing instruction number 12 requested by defendant in the nature of demurrer to the evidence. State v. Mispagel, 207 Mo. 580; 2 Bishop's New Crim. Law, p. 217, sec. 376, sub-div. 2; Rex v. Smith, Russell & Ryan (Eng.) 267; People v. Hurst, 62 Mich. 276; State v. Deutsch, 77 N. J. L. 293; State v. Hunnicut, 34 Ark. 562; State v. Fleener, 58 Ark. 103; People v. Carter, 122 Mich. 668; State v. Ensley, 117 Ind. 496; Captain v. Lee, 18 Neb. 440; Nelson v. State, 86 Neb. 861; Henderson v. State, 129 Ala. 104; Robinson v. State, 109 Ga. 564; Hampton v. State, 99 Miss. 186.

*John T. Barker,* Attorney-General, and *Shrader P. Howell* for the State.

(1) The defendant urges as a ground for reversal the fact that the court refused to give an instruction as to the weight to be attached to circumstantial evidence. The rule is firmly established that where there is direct or positive evidence tending to establish any of the essential elements of the crime charged, an instruction on the weight to be attached to circumstantial evidence is properly refused. In this connection it should also be noted that the jury was fully instructed on the question of reasonable doubt and presumption of innocence. State v. Donelly, 130 Mo. 649; State v. Salmon, 216 Mo. 529; State v. Neizinger, 220 Mo. 48; State v. Hubbard, 223 Mo. 80. (2) Where there is any sub-

stantial evidence offered on the trial to support the verdict returned, this court will not interfere. The State had submitted evidence tending to establish: First, that upon his own application, the defendant was by proper order of court appointed administrator of the estate of Delaven E. Finn on June 27, 1910. Second, that he gave bond, qualified, collected the assets of such estate and in all respects assumed the duties of his office. Third, that on September 9, 1912, the final settlement showed that he had in his possession the sum of $1678.05, which amount he was ordered to pay to the sole heir and beneficiary of said estate and report the fact of such payment to the probate court and file the proper voucher therein. Fourth, that as evidenced by the undisputed records of the probate court, the defendant refused to comply with such lawful order but converted such moneys to his own use. Fifth, that he continued in his unlawful conversion of the money in question up to and including the day of the trial, which was more than nineteen months subsequent to the date of the order made by the probate court. In all of the cases decided by this court under section 4556 and kindred statutes the rule has been announced that the essence of the crime of embezzlement is the act of conversion. And under this particular section of the statute, when conversion, which is generally defined to be "any unauthorized act of dominion or ownership exercised by one person over the personal property belonging to another," is shown, then the crime is complete. In the case at bar it is clearly and definitely shown by the records of the probate court, and further supported by the oral testimony of the judge of that court, that the defendant at the date of the final settlement had in his possession, as administrator, the sum of $1678.05, and that for more than nineteen months he continued in his refusal to pay this money to the beneficiary, as ordered by the probate court. It is true, as contended by the defendant, that

the mere refusal or neglect of a trustee to account for funds received by him is insufficient when standing alone to constitute the crime of embezzlement, yet the decisions uniformly state that such circumstance constitutes "material evidence tending to prove an unlawful conversion which is the essence of the offense." Taking into consideration the facts affirmatively shown, and the attending circumstances and actions of the defendant, there is substantial evidence on which to base the verdict of guilty returned in this case. 15 Cyc. 528; 2 Bishop's New Crim. Law, sec. 372; 4 Elliott on Evidence, sec. 2964; State v. Noland, 111 Mo. 486; State v. Schilb, 159 Mo. 140; State v. Woodward, 171 Mo. 597; State v. Laughlin, 180 Mo. 361; State v. Lentz, 184 Mo. 239; State v. Knowles, 185 Mo. 166; State v. Skinner, 210 Mo. 384; State v. Mispagel, 207 Mo. 580; State v. Martin, 230 Mo. 701; Hanna v. Insurance Company, 241 Mo. 400; State v. Moreaux, 254 Mo. 408; 38 Cyc. 2005. Moreover, it is the province of the jury to judge of the credibility of the witnesses and the weight and sufficiency of the evidence. The case was submitted to the jury under fair instructions, and having considered the evidence they found the defendant guilty of the crime charged. When there is any substantial evidence submitted on the trial on which to base the finding of the trial jury, this court will not interfere. State v. Sassaman, 214 Mo. 695; State v. Sharp, 233 Mo. 269; State v. Concelia, 250 Mo. 411.

FARIS, P. J.—Defendant, convicted in the circuit court of Clay county for a violation of the provisions of section 4556, Revised Statutes 1909, and having had assessed against him as punishment therefor imprisonment in the state penitentiary for the term of three years, has, after the usual motions, appealed.

265Mo.13

The facts are few and simple. Defendant was by the probate court of Clay county duly appointed the administrator of the estate of one Delaven E. Finn, deceased, and in all things duly qualified as such and proceeded to administer said estate and settle it up. There came into his hands as such administrator assets of said estate amounting to some six thousand dollars, which he handled in such wise pursuant to the orders of the probate court as that there was found to be due said estate on the 9th day of September, 1912, at the close of the administration on final settlement filed on that day, the sum of $1,678.05. It was further found that one Myrtle M. Kennedy was the only heir and sole distributee of this estate, and that she was as such entitled upon final settlement to the whole of said above-named sum. This state of facts being shown, the probate court on the date last aforesaid made the following order:

"Now, on this 9th day of September, 1912, comes William E. Fowler, administrator of the estate of Delaven E. Finn, deceased, by his attorney, and also comes Myrtle M. Kennedy, sole heir and distributee of the estate of said Delavan E. Finn, deceased, in proper person and by her attorney; and said administrator now here files his final settlement in said estate, on examination whereof the court finds that there remains in the hands of said administrator for distribution in said estate the sum of $1678.05.

"And the court further finds that said administrator duly published notice of his intention to make final settlement in said estate at this term of court, and filed the proof of said publication herein.

"And the court further finds that said final settlement has been by order of this court regularly continued until this date.

"And the court further finds said Myrtle M. Kennedy to be the sole heir and distributee of the estate of said Delavan E. Finn, deceased.

"And the court having fully examined said final settlement and the vouchers accompanying same, finds it to be correct.

"It is therefore considered, ordered and adjudged by the court that said final settlement be and the same is hereby approved and ordered to be recorded, and that the balance found due for distribution herein, to-wit, the said sum of $1678.05, be by said William E. Fowler, administrator, paid to said Myrtle M. Kennedy, sole heir and distributee, as aforesaid. And it is further ordered by the court that said administrator report the payment of said amount, with voucher therefor, to this court as speedily as is possible."

The above order was offered upon the trial. There was likewise offered the testimony of Judge Lewis G. Hopkins, judge of the probate court of said county, who among other things, identified the records which were duly offered and the effect of which we have stated above. Pertinent to the facts in the case Judge Hopkins was asked and answered the following questions, to-wit:

"Q. I'll ask you to state whether or not any report of distribution was ever filed in the estate of Delavan E. Finn by William E. Fowler, the administrator, in pursuance to the order of your court that he distribute the balance found to be due to the beneficiary of that estate? A. No.

"Q. And was any receipt from the beneficiary to the administrator, William E. Fowler, ever filed or produced in your court? A. No. sir."

This was all of the pertinent evidence offered in the case outside of formal matters showing the appointment of defendant as administrator; his qualifying as such; his filing certain term settlements; his filing the said final settlement, from which the facts and such balance as stated appeared, and the further fact that these matters and things transpired in Clay county. After showing these formal matters and after offering

the above quoted order of the probate court and the above testimony of Judge Hopkins showing the failure and neglect of defendant to file the report of distribution and the voucher mentioned in said order, the State rested. The defendant offered no evidence whatever on his part, but requested among other instructions a peremptory instruction to the jury that they should acquit him on account of the insufficiency of the evidence offered by the State. This instruction the court refused to give.

If other facts shall become necessary for an understanding of the things discussed in the subjoined opinion, they will be found set out therein.

## OPINION.

We are met at the outset by the strenuous insistence of defendant that the evidence adduced by the State is not sufficient to make out a case to go to the jury. Defendant offered no evidence; contenting him with that the State presented.

Approaching this contention in a moderately logical way we note that the applicable part of section 4556, Revised Statutes 1909, under which defendant was prosecuted and convicted, thus provides: "If any . . . administrator . . . shall convert to his own use, in any manner whatever, or shall use by way of investment in any kind of property . . . or shall make way with, or secrete . . . any moneys that may have come to him . . . by virtue of his . . . office . . . or by virtue of any trust reposed in him, . . . every such . . . administrator . . . shall upon conviction, be punished in the manner prescribed for stealing property of the kind or the value of the article so embezzled, converted, taken or secreted."

It will be noted that so far as applicable to the concrete facts before us in the instant case defendant in order to be held guilty must by the proof offered by

the State be brought within one at least of the four ways by which this section can be violated. That is, it must be shown (a) that he converted this sum of $1678.05 (or at least $30 thereof) to his own use; or (b) that he invested it in some kind of property; or (c) that he made way with it, or (d) that he secreted it and hid it away where it could not be found. If the proof shows by any substantial evidence that defendant did all or either of the above acts this conviction must stand; conversely, it must fall if such proof fail.

We have seen from the statement that the only effort made by the State to prove either a conversion, an investment, a making away with, or a secreting of this sum of $1678.05, or of any part thereof, was by a showing that the probate court had ordered the defendant to pay over said above sum to the distributee, said Myrale M. Kennedy, and to "report the payment of said amount with voucher therefor to this court as *speedily as possible*" (italics ours); and further that defendant had not up to the date of the trial below reported such payment to the probate court of Clay county, or filed any voucher with said court—speedily, or otherwise. This was all. There was no showing that defendant had not paid the money to said Myrtle M. Kennedy. For aught that appears he may have done so. The record is clear that defendant did not file any receipt or voucher with the probate court showing or evidencing such payment. And in the ultimate analysis it is as plain as daylight that this failure to file such voucher is the sum total of his offending, so far as this record discloses it. Granting for argument's sake, but without deciding (not being called on here so to do), that the probate court had plenary power to require defendant to file a receipt from the distributee showing the payment of this money to her, was the failure to do so criminal; or to be a little more exact, was the proof of the fact of such failure prima-facie

evidence of a criminal conversion under the terms of section 4556, supra? We do not think so.

It will be noted that no specific time is set for filing such voucher. The order merely requires that it be filed *"as speedily as possible."* At what moment following the making of this order on the 9th day of September, 1912, and prior to the finding of the indictment herein on the 17th day of June, 1913, did the failure to comply therewith cease to be an innocent act and become a crime?

We are clearly of opinion that some showing should have been made of the conversion to his own use of this money by defendant, if in fact he converted it, or of his investing it, if he did so, or of his making away with it, or secreting it, if this was the fact. The defendant may have had the money in the bank to his credit as administrator all the time for aught that appears, or he may in fact have paid it promptly to the distributee as he had been ordered to do by the probate court. As to all things negativing the fact of payment, as well as to anything proving the alleged fact of a conversion, the record is wholly silent, save and except as to the fact that no voucher was filed with the probate court. As stated, it was not shown that payment had not been made promptly to the distributee; neither was any demand for payment, nor any refusal to pay shown, nor any other single fact or circumstance showing a conversion. In such case what was said in the case of State v. Francis, 199 Mo. l. c. 694, becomes apposite:

"When a conviction for crime is sought upon circumstantial evidence it must always be scanned with great caution and can never justify a verdict of guilty . . . unless the circumstances in proof are of such a character and tendency as to produce upon a fair and unprejudiced mind a moral conviction of the guilt of the

accused beyond all reasonable doubt, and to be absolutely inconsistent with his innocence.''

Whenever in our view there is substantial evidence of every element which goes to make up any given crime, however the great weight of the evidence may fall, or on whichsoever side the preponderance may be, we grant to the triers of fact the privilege of passing upon its credibility. [State v. Concelia, 250 Mo. 411; State v. Maggard, 250 Mo. 335.] But that is not the case here. Every fact shown by the State may be absolutely true, and yet the defendant may be innocent. The presumption of innocence with which the law protects the defendant, shields and saves him till it is overcome by proof which as a matter of law makes a prima-facie case of guilt. This is the rule of law for a court; and it continues to be the rule of law till some substantial evidence is adduced to overcome it.

We can no better express this view, and the law of this case as well, than by quoting what was said by Judge Fox in the case of State v. King, 174 Mo. l. c. 662, where it was said:

"Viewing all the testimony in this cause, it is apparent that it is not that clear and convincing proof of the guilt of the defendant as authorizes his conviction. Its tendency, at most, is only calculated to create a suspicion that he was implicated in the commission of the offense.

"Defendants should not be convicted upon mere suspicions of guilt or even strong probabilities of guilt; to warrant their conviction, the testimony, when all considered, should be clear and convincing, entirely satisfying the minds and conscience of the jury.

"This defendant may be guilty; if so, the testimony fails to show it satisfactorily, and if he is, it is better that he escape than to make a precedent that must be general in its application to the guilty and innocent alike.

"Entertaining the views as herein expressed, the judgment will be reversed and the defendant discharged."

It results that for the refusal of the court to instruct the jury to acquit the defendant this case must be reversed and the defendant discharged. Let this be done. All concur.